# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Ruszczyk, as Trustee for the next of kin of Justine Maia Ruszczyk,<br><br>        Plaintiff,<br><br>v.<br><br>Mohamed Mohamed Noor and Matthew Thomas Harrity, acting in their individual capacities as Minneapolis police officers; Janeé Harteau, acting in her official capacity as Minneapolis Chief of Police; Medaria Arradondo, acting in his official capacities as Minneapolis Assistant Chief of Police and Minneapolis Chief of Police; and The City of Minneapolis,<br><br>        Defendants. | Case No. 18-cv-2086 (PAM/TNL)<br><br><br>**ORDER STAYING CASE** |

Robert Bennett and Marc Betinsky, Gaskins, Bennett & Birrell, LLP, 333 South Seventh Street, Suite 3000, Minneapolis MN 55402 (for Plaintiff);

Matthew D. Forsgren, Jenny Gassman-Pines, and Caitlinrose H. Fisher, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis MN 55402 (for Defendant Noor);

Kristin R. Sarff and Tracey N. Fussy, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210 Minneapolis MN 55415 (for Defendants Arradondo, Harteau, and the City of Minneapolis); and

Jason M. Hiveley, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington MN 55438 (for Defendant Harrity).

## I. INTRODUCTION

Late on the ultimately tragic night of July 15, 2017, Justine Maia Ruszczyk ("Ruszczyk") called 911 as a concerned community member to report hearing a woman in distress in the alleyway behind her home. (Compl. ¶¶ 74–77, ECF No. 1; Decl. of Matthew D. Forsgren, at Ex. A ¶ 1, ECF No. 17 (hereinafter "State Crim. Compl.")).[1] Minneapolis Police Officers Mohamed Noor and Matthew Harrity arrived at the alleyway in their marked police SUV, with Harrity driving and Noor riding in the front passenger seat. (Compl. ¶¶ 84–91; State Crim. Compl. ¶ 3). Harrity drove slowly through the alleyway, but never came to a full stop. (Compl. ¶¶ 105–07; State Crim. Compl. ¶¶ 4–5). Once near the end of the alleyway, Noor entered "Code 4" in the police squad computer, which signaled that the situation was safe and under control. (Compl. ¶¶ 108–10; State Crim. Compl. ¶ 6). Sometime after this code was entered and while Harrity was waiting to leave the alleyway to respond to another police call, Noor fired his duty weapon across Harrity's chest and lap, through the open driver's side window. (Compl. ¶¶ 111–15, 134; *see* State Crim. Compl. ¶¶ 6–7). The bullet fatally struck Ruszczyk. (Compl. ¶¶ 115, 151, 162–63; State Crim. Compl. ¶¶ 9–10).

An investigation into the shooting followed and Noor asserted—and continues to assert—his Fifth Amendment right against self-incrimination and to remain silent. (Compl. ¶¶ 104, 231, 233). Noor was charged on March 20, 2018 in Hennepin County District Court by the State of Minnesota with two counts: (1) Murder – Third Degree –

---

[1] The state criminal complaint was also provided as Exhibit 1 to the Declaration of Kristin R. Sarff. (ECF No. 10). The Court cites to the enumerated version provided in the Forsgren Declaration for clarity.

Perpetrating Eminently Dangerous Act and Evincing Depraved Mind, in violation of MINN. STAT. § 609.195(a); and (2) Manslaughter – Second Degree – Culpable Negligence Creating Unreasonable Risk, in violation of MINN. STAT. § 609.205(1). (State Crim. Compl., at 1; *see* Compl. ¶ 227). Noor has disclosed he intends to rely upon three defenses at his criminal trial: that he is not guilty; that he acted in self-defense; and that he used reasonable force. (Decl. of Kristin R. Sarff, at Ex. 2, ECF No. 10). The Minnesota state court held a hearing on September 27, 2018 to address motions concerning probable cause and other pretrial matters. (Sarff Decl., at Ex. 4; *see* Decl. of Robert Bennett, at Exs. 1–2, ECF No. 30 (Noor's motion to dismiss for lack of probable cause and motion to dismiss for prosecutorial misconduct submitted in the criminal proceeding); ECF No. 32 (briefing submitted in the criminal proceeding by the State of Minnesota and Noor concerning Noor's motion to dismiss for lack of probable cause); *see* ECF No. 34). The trial date has been set for April 1, 2019. (ECF No. 34).[2]

While the state criminal proceeding against Noor remains pending, Plaintiff John Ruszczyk,[3] as trustee for Justine Maia Ruszczyk's estate, brought suit on July 23, 2018 against Noor, Harrity, the Minneapolis Police Department police chiefs, and the City of Minneapolis, asserting four claims for relief. In Count 1, Plaintiff asserts Fourth Amendment violations under 42 U.S.C. § 1983 against Noor for shooting and killing Ruszczyk. (Compl. ¶¶ 285–90). In Count 2, Plaintiff asserts, under 42 U.S.C. § 1983, that

---

[2] The presiding judge in the state criminal case is the Honorable Kathryn L. Quaintance, District Court Judge for the Fourth Judicial District of Minnesota.
[3] To avoid confusion, this Court refers to Justine Maia Ruszczyk as "Ruszczyk" and the trustee of her estate, John Ruszczyk, as "Plaintiff."

Noor and Harrity conspired together to deprive Ruszczyk of her civil rights in the shooting and its aftermath. (Compl. ¶¶ 291–96). In Count 3, Plaintiff asserts that the City of Minneapolis violated Ruszczyk's civil rights by failing to train its police officers appropriately. (Compl. ¶¶ 297–303). In Count 4, Plaintiff asserts that the City of Minneapolis and its police chiefs, Janeé Harteau (former) and Medaria Arradondo (current), oversaw a custom, pattern, or practice concerning the improper use of deadly force on civilians by officers of the Minneapolis Police Department. (Compl. ¶¶ 304–11). All defendants have moved for a stay of proceedings in this civil case until the state criminal proceeding against Noor concludes. Plaintiff opposes Defendants' motions.

## II.   ANALYSIS

### A. Legal Standard

A federal district court has "the inherent power to stay the proceedings of an action, so as to control [its] docket, to conserve judicial resources, and to provide for the just determination of cases which pend before [it]." *Armstrong v. Mille Lacs Cty. Sheriffs Dept.*, 112 F. Supp. 2d 840, 843 (D. Minn. 2000) (citing *Landis v. Am. Water Works & Elec. Co.*, 299 U.S. 248, 254–55 (1936)). The Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)). But "[a] stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted." *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993); *see United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) ("Federal

courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . .").

"[T]o warrant a stay, [the] defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823 (citing *Anglada v. Sprague*, 822 F.2d 1035, 1036–37 (11th Cir. 1987)). "In making this determination, a Court must consider the particular circumstances, and the competing interests, that are involved in each case." *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) (citing *Fed. Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). "In addition to considering the extent to which a defendant's Fifth Amendment rights are implicated," courts may consider the following five factors where relevant:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. at 1024 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995)).

### B. *Keating* Factors and *Koester* Analysis

#### 1. Plaintiff's Interest and the Prejudice of Delay

Plaintiff "ha[s] a legitimate interest in the expeditious resolution of [his] case." *Tr. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995); *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008); *Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. at 1024. Plaintiff correctly points out that despite the speedy trial rights applicable to criminal proceedings, such proceedings are sometimes anything but. (Pl.'s Mem. in Opp., at 11–14). Thus, a stay in this case until the conclusion of Noor's state criminal prosecution would have no defined end point in time. Defendants ask that the stay remain in place until a specific triggering event: Noor's charges are dismissed; he is found not guilty; or he is sentenced following a guilty plea or a guilty verdict. While these are common conclusions to criminal prosecutions, Defendants fail to account for other outcomes, such as mistrials or hung juries, as well as direct appeal and possible postconviction petitions. Put another way, the timeline of a criminal prosecution is difficult to predict and delays are a distinct possibility. To be sure, any such delays are speculative at present and the Court has no indication that the state criminal case will not move expeditiously following the September 27, 2018 hearing. Indeed, the trial date has been set for April 1, 2019. Nonetheless, the uncertain timeline of the requested stay hinders Plaintiff's interest in moving this lawsuit forward.

Some courts have noted that the possibilities of substantial delay "given the unpredictable nature of criminal proceedings . . . could potentially result in Plaintiff's

inability to discover evidence material to h[is] claims" should a stay be entered. *Doe v. St. Clair Cty.*, 2018 WL 3475459, at *2 (S.D. Ill. July 18, 2018). Conversely, other courts have found that "the criminal justice system will help safeguard the evidence" in cases that share overlapping issues in the criminal and civil trials. *Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993). Indeed, "the resolution of the [c]riminal [c]ase may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action." *Tr. of Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1140. Given the substantial overlap between the civil and criminal proceedings, the Court is not concerned that evidence will be lost or made unavailable if this lawsuit, including discovery, were stayed. Plaintiff's lawsuit asserts that Noor and Harrity concocted a cover story to avoid liability for Ruszczyk's death. This was possible, Plaintiff asserts, because Noor and Harrity failed to activate their body-worn cameras to record the incident until after both were out of the squad vehicle and standing over Ruszczyk. Through this lens, Plaintiff asserts a stay will allow Noor and Harrity to crystallize their story. What Plaintiff fails to note, however, is that this theory cannot be adequately tested while Noor and Harrity assert their Fifth Amendment rights. Such information is likely to be presented in Noor's criminal proceeding and the testimony will then be preserved and available in this civil suit. The Court finds no prejudice to Plaintiff with respect to evidentiary concerns should this matter be stayed.

As the parties point out, Plaintiff's stated purpose for bringing suit is to attempt to receive an explanation for Noor's July 15, 2017 shooting of Ruszczyk. (Pl.'s Mem. in

Opp., at 16, ECF No. 29). Plaintiff emphasizes that "he deserves to know the truth." (Pl.'s Mem. in Opp., at 4). And, certainly, that is understandable as he is Ruszczyk's father and the trustee of her estate. If this case were to proceed in the ordinary course contemporaneously with the state criminal proceeding, Noor would assert his Fifth Amendment right—as discussed more fully below—and, in all likelihood, Plaintiff would not receive an explanation from Noor concerning the events on July 15, 2017. While Plaintiff has asserted he may be able to gather at least some information from Harrity through discovery, Harrity has intimated that the specter of prosecution may also lead him to a limited assertion of his Fifth Amendment right against self-incrimination. Thus, where Plaintiff seeks answers, he is poised to receive none of the potentially critical testimony of Noor, and possibly Harrity, should this civil suit proceed.

The Court is extremely sympathetic to the fact that a stay "lengthen[s] the time during which the Plaintiff must address the traumatic events alleged." *St. Clair Cty.*, 2018 WL 3475459, at *2. Plaintiff should not be forced to sit idly on his claims for an indefinite amount of time. On the other hand, it is altogether probable that Plaintiff will receive little to no answers to his questions from Noor and possibly Harrity through this civil lawsuit while the murder and manslaughter charges are pending. Noor has already asserted his Fifth Amendment right in the investigation leading up to being criminally charged, and he has represented that his position will not change until his criminal case concludes. Noor's partner, the only other known living witness to Noor's shooting of Ruszczyk, has likewise represented that he may assert his Fifth Amendment right pending Noor's trial. So while Plaintiff should not be forced to sit indefinitely idle, his

understandable quest for the truth behind his daughter's tragic death would be enhanced, rather than diminished at this time, by a stay of this civil proceeding while the criminal trial proceeds. The Court does not find that this factor weighs against a stay.

## 2. Burden on Defendants

Looking first at Defendant Noor, he faces substantial burden if this case is not stayed. "Any individual defendant who is forced to respond to discovery will be faced with the choice of whether to claim or waive the privilege against self-incrimination." *Chagolla*, 529 F. Supp. 2d at 947. This discovery may also "expose the basis of the defendant['s] criminal defense in advance of trial," *Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004), further burdening a criminal defendant's strategies and tactics. Noor has an interest "in avoiding the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case," particularly where the subject matter of the criminal and civil cases so significantly overlaps. *Tr. of Plumbers and Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1140. In fact, the civil suit against Noor almost entirely overlaps his criminal prosecution as both concern the propriety of his use of deadly force in shooting Ruszczyk on July 15, 2017.

As Noor's counsel made abundantly clear at the hearing on the instant motions, if this civil case proceeds simultaneously with Noor's criminal prosecution, Noor will invoke his Fifth Amendment right whether it involves responses and testimony provided in discovery or, more pressing to the present stage of litigation, in preparing his answer to Plaintiff's Complaint. This is not sophistic speculation given Noor has already invoked his Fifth Amendment right in the investigation that followed the shooting and preceded

the criminal charges. Noor's Fifth Amendment invocation is certainly appropriate and, indeed, it would be surprising if Noor's seasoned criminal counsel did not rather insist on such invocation at this point of the criminal proceeding.

Plaintiff will likely use Noor's privilege invocation to help prove Noor's liability. *S.E.C. v. Brown*, 658 F.3d 858, 863 (8th Cir. 2011) ("The Fifth Amendment permits an adverse inference when the privilege against self-incrimination is claimed by a party in a civil case.") (citing *Baxter*, 425 U.S. at 320). While this is permitted by the law, "the question of whether it is fair does not yield the same answer in every case." *Chagolla*, 529 F. Supp. 2d at 947. As the *Chagolla* court noted:

> it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer. Though a person who claims the privilege in such circumstances and then has it used against him in a parallel civil case ordinarily is given the chance to explain his invocation of the privilege, the finer points of risk-aversion as it relates to criminal defense practice easily can be lost on lay jurors. A civil defendant in this situation who is effectively backed into a corner in which he has no viable choice but to claim the privilege is forced to face a significant risk of unfair prejudice that may be virtually impossible to remedy.

*Id.* This same reasoning that weighed in favor of a stay in *Chagolla* applies here. The facts underpinning Noor's criminal prosecution are encompassed wholly by the Section 1983 claim brought against him by Plaintiff. Absent a stay Noor would be forced to choose between defending himself in the criminal prosecution or this civil lawsuit. Noor should not now be forced to chose between his Fifth Amendment right or effectively forfeiting this lawsuit.

Noor's invocation of his Fifth Amendment right may also impact his co-defendants. As the City Defendants[4] argue, Noor's assertion of his right against self-incrimination will likely deprive them of information critical to their own defense on the merits where liability rests on a link between the City of Minneapolis's policies and Noor's actions. (City Defs' Mem. in Supp., at 12–13, ECF No. 11). To defend against the municipal liability claims asserted, the City Defendants must investigate Noor's observations and decisions in order to evaluate the reasonableness of his use of deadly force. (City Defs' Mem. in Supp., at 13). If Noor invokes his Fifth Amendment right, the City Defendants cannot access this information known to Noor. Moreover, the City Defendants have no control over Noor's Fifth Amendment assertions, unlike Noor who chooses when or whether to invoke his Constitutional protections. This burdens the City Defendants' ability to engage in discovery and defend themselves.

The City Defendants additionally point to the difficulty in acquiring various other discovery should this case proceed. Under the Minnesota Government Data Practices Act, "investigative data collected or created by a law enforcement agency in order to prepare a case against a person . . . for the commission of a crime or other offense for which the agency has primary investigative responsibility are confidential or protected nonpublic while the investigation is active." MINN. STAT. § 13.82, SUBD. 7. Such data becomes public, *inter alia*, once it is presented as evidence in court, a defendant's appeal rights are exhausted or expired, or disclosure is authorized or ordered. MINN. STAT. § 13.82, SUBD. 7. It is well-settled in this District—and a governmental entity like the

---

[4] "City Defendants" refers to Janeé Harteau, Medaria Arradondo, and the City of Minneapolis.

City of Minneapolis should be well aware—that the Minnesota Government Data Practices Act yields to civil discovery as governed by the Federal Rules of Civil Procedure. *See, e.g.*, *Scheffler v. Molin*, Case No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4, (D. Minn. Aug. 10, 2012) ("It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information. . . . The MGDPA tells Minnesota government authorities what information they must and must not disclose when a request is made under the MGDPA. What it does not do is trump the Federal Rules of Civil Procedure, which define what information is discoverable in a federal lawsuit . . ."). Thus, the Minnesota Government Data Practices Act presents no legal concern to this Court regarding the accessibility of discovery.

Conversely, the protective order governing Noor's criminal case does. Under that protective order, discovery provided in the criminal case cannot be shared with any non-party or their counsel. (ECF No. 31-1 ¶ 3). The expansive discovery permitted under the Federal Rules of Civil Procedure would likely put the parties in a position of litigating the propriety and scope of the Minnesota court's protective order and whether discovery can be obtained while it remained active. It is prudent for the Court to avoid such a dispute where possible. *Glickman, Lurie, Eiger & Co. v. I.R.S.*, 1975 WL 706, at *4 (D. Minn. Oct. 14, 1975) ("The Federal courts are not empowered to review the propriety of protective discovery orders in State court proceedings."); 28 U.S.C. § 1738 ("judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or

Possession from which they are taken."); *see also Feinwachs v. Minnesota Hosp. Assoc.*, Case No. 11-cv-8 (JRT/SER), 2018 WL 882808, at *4 (D. Minn. Feb. 13, 2018) ("This Court will not exercise what amounts to appellate jurisdiction and effectively overrule or vacate a state court protective order shielding documents from the public. Comity between state and federal courts and constraints placed on a federal district court's jurisdiction dictate nothing less.").

Based on the foregoing, Noor, Harrity, and the City Defendants face substantial burden should this case presently proceed. This factor weighs in favor of a stay.

### 3. Convenience of the Court

Courts have "a strong interest in keeping litigation moving to conclusion without *unnecessary* delay." *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1241 (N.D. Okla. 2003) (emphasis added); *State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, Case No. 15-cv-2527 (SRN/HB), 2016 WL 9307608, at *6, (D. Minn. Apr. 26, 2016) (noting that the court has a "strong interest in managing its docket and moving cases forward"). But stays can "promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action." *Crawford & Sons, Ltd.*, 298 F. Supp. 2d at 319. Further, "the resolution of the criminal case might reduce the scope of discovery in th[is] civil case or otherwise simplify the issues." *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (citing *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967)); *Crawford & Sons, Ltd.*, 298 F. Supp. 2d at 320 (noting that "a conviction or acquittal in the criminal action may negate or buttress some or all of the plaintiffs' claims").

A stay here would conserve scarce judicial resources. Given the substantial overlap between Noor's prosecution and the Section 1983 civil claim asserted against him, the discovery produced by the criminal proceeding will likely be relevant to and discoverable for this civil proceeding. Moreover, the outcome of Noor's prosecution might simplify the parties' positions in this matter, or even resolve some of the liability questions.

As the Court noted above, if discovery proceeds, the Court will likely be called to decide questions related to the state court's protective order, a dispute that ought to be avoided if possible. This is unlikely to be the only prickly motion practice. Absent a stay, discovery may well "become bogged down" as the Court "will be forced to make numerous individual rulings on what will likely be a long series of Fifth Amendment assertions." *United States v. All Meat and Poultry Prods.*, 2003 WL 22284318, at *5 (N.D. Ill. Oct. 3, 2003). This motion practice would occur in discovery that may well need to be re-spun following the outcome of Noor's criminal trial to gather information inaccessible via Fifth Amendment invocations and to explore anew previous discovery in light of the criminal case's outcome. These are disputes and wasted efforts that may be avoided, perhaps in their entirety, if a stay were imposed to allow for the completion of the criminal proceedings.

The City Defendants have intimated at motion practice aimed at Plaintiff's Complaint. While the City Defendants' are right to point out their obligation to have a good faith basis underpinning their motion, the Court is unconvinced a stay is needed for the City Defendants' likely motion to dismiss as such matters are decided on the

pleadings alone. But such motions need not be decided if the criminal proceeding changes the factual and legal landscape of this civil litigation. If anything, the parties may need to reform their pleadings following the criminal proceeding.

These considerations related to the Court's resources and case management weigh in favor of a stay. Moreover, to reduce further the burden of a stay a court can "require[e] the parties to advise the Court on any development in the criminal case." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1040 (W.D. Mich. 2007). Such a requirement would be appropriate here, particularly given the concerns with respect to the unpredictable nature of criminal proceedings. With periodic status updates concerning the developments of the criminal case, the Court would be able to make an informed decision as to whether to continue, modify, or end the stay.

### 4. Interest of Non-Parties

All parties assert this factor is not applicable as all interested persons or entities are already parties to the civil suit. The Court agrees that there are no non-parties that have an interest in whether a stay is granted that would not be considered alongside the interest of the general public, with one exception.

The Hennepin County Attorney's Office, via a letter filed with the Court, asserts "an interest in the motions for stay as the prosecuting agency in the state criminal proceeding." (HCAO Letter, at 1, ECF No. 31). The Hennepin County Attorney's Office agrees that this civil proceeding should be stayed to "assur[e] the integrity and fairness of the criminal case." (HCAO Letter, at 1). Specifically, the Hennepin County Attorney's Office expresses concern that discovery in this civil case could undermine the

effectiveness of the state court's protective order and thereby prejudice the jury pool, particularly given the "exceptional amount of publicity" garnered by the criminal case. (HCAO Letter, at 1). It is unlikely that a protective order in this case would fully insulate this harm. *In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes*, 63 F.3d 1222, 1224–25 (9th Cir. 1995) (noting that "[i]ndividuals cannot totally rely on protective orders" as there is always a risk of a leak, they are subject to modification, and often serve only as stopgap measures pending future release). While many of the concerns expressed by the Hennepin County Attorney's Office overlap those of the moving defendants, it is notable that the Hennepin County Attorney's Office offered its view to the Court on the motions pending in a case to which it is not a party.

### 5. Interest of the Public

The public has a great interest in this case. Few disputes grab America's conscience, and indeed that of civil societies throughout the world, more than where there is a claim the very individuals or institutions people have mandated to use force when necessary to secure persons, rights, and property have taken a life by exceeding the force necessary to uphold that mandate. A stay would delay the ultimate outcome of this civil proceeding and the "public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law via the Civil Justice Reform Act of 1990." *Chagolla*, 529 F. Supp. 2d at 946–47 (citing 28 U.S.C. §§ 471–82). The public also "has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla*, 529 F. Supp. 2d at 947; *Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted

criminal prosecution that could arise from [a] death."). It is worth considering the "possibility that the orderly progress of the criminal cases and investigations—particularly those involving the exact same incidents at issue in the present case—will be hindered by issues that could arise from ongoing civil discovery." *Chagolla*, 529 F. Supp. 2d at 947. Where these two public interests collide at this moment in time, and in the current procedural postures of the respective criminal and civil cases, this "civil case, which carries only civil [remedies], is not of an equally pressing nature" given the substantial criminal charges of murder and manslaughter that Noor faces. *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1072–73 (C.D. Cal. 2008); *State Farm Mut. Auto. Ins. Co.*, 2016 WL 9307608, at *6 ("Courts around the country have recognized that 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'") (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).

In a case where Noor's counsel has already assured heavy invocation of the Fifth Amendment, the record will be incomplete. "There is an important public interest in having that issue decided on the basis of a full factual record." *Edwards v. Atrium Vill.*, 127 F.R.D. 494, 499 (N.D. Ill. 1989). Such an undeveloped record goes against the public's "strong interest in police misconduct and in official corruption and violations of civil rights by public officials." *Morrow v. City of Tenaha*, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010); *Carnaby v. City of Houston*, 2008 WL 4546606, at *2 (S.D. Tex. Oct. 10, 2008) ("The public has a particular interest in the instant case because it involves matters of public safety and the deadly force policies of the local police

department."). Indeed, "[p]olice misconduct creates one of the ultimate 'lose/lose' situations in our democratic society." *Doe v. Marsalis*, 202 F.R.D. 233, 238 (N.D. Ill. 2001). While Plaintiff asserts his "lawsuit is a way to effect change benefitting the public at large and prevent future police misconduct of similar ilk," (Pl.'s Mem. in Opp., at 27), one court has noted that civil lawsuits result in "no real changes or evaluations to prevent further misconduct," *Marsalis*, 202 F.R.D. at 238. Thus, that court reasoned, the "only way to end this syndrome is to evaluate and reevaluate past practices" via tools such as "public debate and appropriate media scrutiny." *Id.* Noor's invocation of his Fifth Amendment right will not advance the parties or public towards this goal because the record will be incomplete. The parties and public will instead be left in essentially the same position as they are now: with no explanation for the July 15, 2017 shooting of Ruszczyk. Just as the Court, the parties, and the non-parties, the public has a paramount interest in preserving the indispensable linkage between justice and truth and fairness.

Accordingly, the public's interest weighs in favor of a stay.

### 6. *Koester* Considerations and the Majority of the *Keating* Factors Weigh in Favor of a Stay

As *Koester* notes, a "defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." 11 F.3d at 823 (citing *Anglada*, 822 F.2d at 1036–37). Noor has certainly made that showing. He faces some of the most serious charges in criminal jurisprudence for the very same conduct encompassed by Count 1 of

18

Plaintiff's Complaint, and effective defense of both the criminal case and this civil suit at present is impossible. Thus, a stay is warranted for Noor. While the City Defendants and Harrity do not face the same perils of criminal prosecution, their defenses and, in some respects, their fate are so intertwined with Noor's that effective defense is also currently impossible while Noor's criminal case remains pending. Moreover, the policies of the Minneapolis Police Department have been woven into the criminal case against Noor, (*see* ECF No. 32), further intertwining the criminal case against Noor and this civil suit against a broader set of defendants. As such, a stay is warranted as to all defendants under *Koester*.

Returning to summarize the *Keating* factors, the Court finds a stay is currently warranted. With respect to Plaintiff's interest and the prejudice caused by a delay, this factor is neutral. While Plaintiff has substantial interest in proceeding without delay, the Court finds no prejudice with respect to evidentiary matters. Also, Plaintiff's bona fide quest for the truth of what occurred that tragic night is enhanced by a stay of the civil proceeding. Defendants, conversely, all face substantial burden if a stay is not entered. Noor would be forced to choose between defending his criminal prosecution or this civil proceeding, a choice that would also have serious consequences for his co-defendants. The Court's efficient management of this case will be enhanced by a stay. Noor's criminal case may narrow and simplify the issues disputed in this civil suit and will generate relevant discovery. On the other hand, absent a stay, the Court would likely face substantial disputes concerning extremely difficult issues such as the applicability and scope of Fifth Amendment assertions and the propriety of a state court's protective order,

as well as the probability that parties will later move to reopen or supplement discovery that would have already been completed. Moreover, the burden on the Court of a stay is tempered by requiring the parties to keep the Court informed periodically as to the state criminal proceeding. This further allows the parties an opportunity to address the propriety of continuing the stay, particularly given the unpredictable trajectory of criminal proceedings. Concerning non-parties, the Hennepin County Attorney's Office has expressed valid concerns as to protecting the integrity of the jury pool in light of the expansive civil discovery process. Such concerns are shared by the general public, who together with the Court, parties, and non-parties, have a concomitant interest in maintaining the indispensable nexus between the justice system and truth and fairness, particularly in a case that has garnered much publicity locally, nationally, and internationally. Thus, the majority of *Keating* factors weigh in favor of a stay.

## III.    EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND

Pursuant to Rule 6, the Court may, for good cause, extend the period of time for a party to answer or otherwise respond. Fed. R. Civ. P. 6(b)(1). Such "motions to extend are to be liberally permitted." *Baden v. Craig-Hallum, Inc.*, 115 F.R.D. 582, 585 (D. Minn. 1987). Defendants seek to extend their deadline to answer or otherwise respond to Plaintiff's Complaint to 45 days after expiration of the stay imposed here. The Court finds this request appropriate and with good cause. As noted above, the criminal proceeding may alter the factual and legal landscape underpinning this matter such that

extra time may be needed to respond appropriately.[5] Accordingly, the Court grants Defendants' motions.

## IV.    CONCLUSION

This is a case of multifaceted difficulty for all parties involved. Understandably, Plaintiff wants to progress his case. That progression, however, is not appropriate currently for the reasons discussed herein. The Court will, though, require periodic updates from the parties as to the status of the criminal case so as to be in position to reweigh the propriety of the stay at the appropriate time.

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Noor's Motion to Stay, (ECF No. 14), City Defendants' Motion to Stay Proceedings and Extend the Time to Answer or Respond to the Complaint, (ECF No. 8), and Defendant Harrity's Motion to Stay and to Extend Deadline to Answer or Respond to Complaint, (ECF No. 23), are **GRANTED** as follows:

1.      This matter is stayed until the criminal case pending in the Fourth Judicial District of Minnesota, captioned *State of Minnesota v. Noor*, Court File No. 27-CR-18-6859, is resolved via dismissal, not guilty verdict, or sentencing following a guilty plea or guilty verdict, or until further order of the Court.

---

[5] This also means that Plaintiff may well need to amend or supplement his complaint once the stay is lifted. The parties should communicate with one another following the lifting of the stay so as to avoid duplicative and unneeded motion practice.

2.      Defendant Noor, Defendant Harrity, and the City Defendants shall answer or otherwise respond to Plaintiff's Complaint no later than 45 days following the termination of the stay.

3.      Defendant Noor, with input from Plaintiff and all other parties in this action, shall file a status letter with the Court every 60 days following this Order. The letter shall inform the Court of the status of the state criminal proceeding, including relevant developments occurring since the previous letter and any upcoming deadlines.

4.      All prior consistent orders remain in full force and effect.

5.      Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions, and the like, including without limitation: assessment of costs, fines, and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Date: October 2, 2018                              _____*s/ Tony N. Leung*_____
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   District of Minnesota

                                                   *Ruszczyk v. Noor, et al.*
                                                   Case No. 18-cv-2086 (PAM/TNL)